EVERETT W. GROSS, Plaintiff and Appellant, v. DICK
HOLZWORTH, Defendant and Respondent.

No. 11255.
Submitted April 1, 1968. Decided May 3, 1968.
Rehearing Denied May 20, 1968.
440 P.2d 765

180

Arthur P. Acher, (argued), Helena, Rankin & Acher, Helena, for appellant.

A. L. Libra, (argued), Helena, for respondent.

· MR. JUSTICE CASTLES, delivered the Opinion of the Court.

This is an appeal by Everett W. Gross, then a licensed attorney practicing in the city of Helena, Montana. Gross will hereinafter be referred to as the appellant or Gross. Gross is appealing a judgment entered in his favor in the amount of $199.25. In his amended complaint Gross had alleged that he was owed a total of $1200. The action in the court below, which was had without jury, concerned money allegedly due the appellant on a contract for the performance of legal services.

The defendants in the court below counterclaimed for money allegedly owed them on a settlement effectuated by the appellant. The denial of the counterclaim is also appealed. For convenience the cross appellants will be referred to as the respondents.

The defendant corporation, Union Contractors Ltd., was duly organized under the laws of the province of British Co-

lumbia. Holzworth, at all times material to this action, was president of that corporation.

Prior to December 4, 1962, Holzworth, desirous of obtaining legal representation for his company in various claims which the company intended to litigate, went to see Stanley Sorenson, then a licensed attorney practicing in the city of Helena.

Mr. Sorenson had as an associate the plaintiff and appellant in this case. Appellant given the task of investigating the various claims of Holzworth. He found several of them to be meritorious.

Consequently Holzworth and Sorenson entered into a contract for legal services in a suit against the First National Bank of Bonners Ferry, Idaho, now a part of the Bank of Idaho. The contract is as follows:

"This contract made and entered into this 4th day of December, 1962, by and between DICK HOLZWORTH of Helena, Montana, individually and acting as President of Union Contractors Ltd., and on their behalf, hereinafter referred to as client and STANLEY P. SORENSON of Helena, Montana, hereinafter referred to as Attorney, to-wit:

"WHEREAS, Client has certain causes of action against The First National Bank of Bonners Ferry, Idaho, now a part of the Bank of Idaho, Harold McNally of Bonners Ferry, Idaho, and C. W. Thornton of Troy, Montana, and is desirous of employing attorneys to recover for him and them such sums of money as may be rightfully due them.

"IT IS HEREBY AGREED by and between the parties that Client will give full cooperation to Attorney in all particulars in effecting such recovery and in the institution and prosecution of any necessary litigation and that Attorney will diligently perform all services needed and required to effect such recovery, including the institution of litigation and necessary appeal thereof.

"That the consideration for such services by Attorney shall be as follows:

"Twenty-five percent of any funds recovered without instituting suit.

"In the event any suits are necessary and are instituted, forty per cent of any sums recovered.

"In the event that any appeal from any lower court decision is necessary, fifty per cent of such sum recovered.

"IT IS FURTHER AGREED that the cash out of pocket expenditures made shall first be deducted from any amount recovered before the aforementioned division of recovery.

"IT IS FURTHER AGREED that client will arrange for and pay Attorney for cash out of pocket expenditures in the attempt to effect the recovery and the institution and prosecution of litigation."

We note here that obviously the contingent fee is based on the net of the settlement; yet as will appear, appellant took it on the gross settlement.

It is undisputed that appellant worked on several of the cases involving the respondents. It is also clear that he took almost complete charge of the action against the Idaho Bank, the action specifically covered by the contract.

The trial court found in its order finding facts and conclusions of law that though the contract referred to only one particular case, the parties acted in reliance upon the contract as though it covered all litigation in which the respondents were represented by the appellant.

The trial court further found that appellant advanced sums of money for costs and expenses in connection with the various cases in litigation, and that the defendant used the plaintiff's gasoline and telephone credit cards.

The trouble between the parties apparently began with the particular item of litigation expressly mentioned in the contract. It became obvious that the case could be settled before trial for the sum of $35,000. On June 12, 1964, respondent Holzworth signed an authorization to this effect.

There was however, some misunderstanding as to how the

proceeds of this settlement were to be distributed between appellant and respondent. Holzworth testified that it was his understanding that the corporation would receive $25,000. Sorenson testified that he knew that this was Holzworth's understanding, but that he left it up to the appellant and respondent to finally decide the matter. Appellant testified that he knew of respondent's desire to have such a division, but that no agreement to this effect was ever reached. There is no evidence in writing that the original division contemplated in the contract was in any way modified.

Gross for some reason felt constrained to bring into the case one A. E. Sheridan, a licensed attorney practicing in the state of Iowa. Holzworth did not particularly like this, but left it up to Gross. Mr. Sheridan carried on the final negotiations with the bank of Idaho.

When the settlement of the dispute between respondent and the bank was reached, respondent was presented with a draft for $21,000, while the attorneys received a separate draft for $14,000. These sums represent the division of the funds contemplated under the original contract, except that, as remarked before, the "out of pocket expenditures made shall first be deducted * * * *before* the aforementioned division of recovery."

Appellant failed to deduct any of the expenses of the litigation from the total amount of the settlement undertaken, though this was called for in the contract. Appellant expressed the feeling that he would get the money when the other litigation involving the respondents was completed.

Holzworth was however very dissatisfied with the settlement. Relations between the two parties became quite strained, and Gross eventually withdrew from representing Holzworth.

As part of his original complaint, appellant attached an exhibit containing an itemized list of the expenses allegedly owed him. These expenses were broken down thusly:

"Charges made by defendants to Everett W. Gross
gasoline credit cards and gasoline account paid
by Everett W. Gross for defendants ......................... $   222.95
Telephone calls and charges made by defendants to
telephone credit card of Everett W. Gross ............                49.37
Balance due Everett W. Gross for expenses from
the settlement Holzworth v. Sime .............................              323.84
Expenses in Union Contractors v. Thornton and
Union Contractors v. Thornton and Stephenson ..            160.06
Expenses in Union Contractors v. McNally et al. ....           (453.86)
Less $35.00 paid ...............................................................           418.86
Holzworth v. Continental Contractors (Canada) ..              13.50
Holzworth v. Miles City Bank, expenses ....................            132.10
Holzworth v. Kathan, expenses .....................................              23.17
Miscellaneous expenses ..................................................              63.80

$1,409.65"

The trial court found:

"* * * That said account sets forth items not covered
by said contract, and items legally waived by the plaintiff.
The following items set forth are not due the plaintiff by the
defendants, less the sum of $35.00 previously received by the
plaintiff:

"7/25/63    Sheriff, Bozeman, Montana ............................ $  10.60
7/12/63    Husky Oil Co., Defendant's Account .........      15.11
8/19/63    Husky Oil Co., Defendant's Account .........        7.01
9/3/63     Husky Oil Co., Defendant's Account .........      14.81
9/17/63    Filing fee, Creston B. C. ...................................        5.50
10/1/63    Husky Oil Co., Defendant's Account .........      11.00
10/4/63    Husky Oil Co., Defendant's Account .........        2.08
11/14/63   Sheriff, Libby, Montana ...................................      16.69
11/20/63   Sheriff, Libby, Montana ...................................      10.00
12/9/63    Husky Oil Co., Defendant's Account .........      20.59
11/22/63   Husky Oil Co., Defendant's Account .........        2.29
12/20/63   Clerk, Miles City Court ...................................        2.00
12/31/63   Sheriff, Libby, Montana ...................................      10.37

| | | |
|---|---|---|
| 1/6/64 | Husky Oil Co., Defendant's Account | · 7.75 |
| 1/6/64 | Husky Oil Co., Defendant's Account | 6.20 |
| 2/6/64 | USF & G, Bond | 10.00 |
| 2/29/64 | Husky Oil Co., Defendant's Account | 6.45 |
| 2/19/64 | Telephone, Vancouver BC | 2.45 |
| 2/29/64 | Seal | 9.50 |
| 3/21/64 | Husky Oil Co., Defendant's Account | 6.56 |
| 4/20/64 | Husky Oil Co., Defendant's Account | 3.50 |
| 3/64 | Telephone account | 4.55 |
| 5/9/64 | Middlemas, Sheriff | 1.60 |
| 5/9/64 | Husky Oil Co., credit card | 7.22 |
| 5/6/64 | Telephone, Butte to Miles City | 2.47 |
| 5/19/64 | Vancouver telephone | 2.55 |
| 5/64 | Husky Oil Co., Defendant's Account | 25.40 |
| 7/22/63 | USF & G, Bond | 10.00 |
| | Total | $234.25 |
| | Less $35.00 paid | 35.00 |
| | Due | $199.25 |

———•———

"V.

"That the defendants have not established facts authorizing them to relief under the allegations of the counter claim."

In reviewing the correctness of the trial court's decision, we adhere to a long line of decisions in which we have held that we will not disturb the trial court's findings unless there is a decided preponderance of evidence against these findings. Larsen Farms v. City of Plentywood, 145 Mont. 509, 402 P.2d 410; Kosel v. Stone, 146 Mont. 218, 404 P.2d 894; Hurly v. Hurly, 147 Mont. 118, 411 P.2d 359; Dufie v. Metropolitan Sanitary & Storm Sewer Dist. No. 1, 147 Mont. 541, 417 P.2d 227; Studer Const. Co. v. Rural Special Impr. Dist. No. 208, 148 Mont. 200, 418 P.2d 865; Interstate Manufacturing Co. v. Interstate Products Co., 151 Mont. P. 163, 439 P.2d 911.

However we cannot see that there is a decided preponder-

ance of the evidence against the findings of the trial court as to the amount of expenses owed the appellant under the contract which were not waived and which were covered by the contract.

Assuming that the trial judge was correct in his findings of fact that the contract in question covered all litigation in which respondent was represented by Mr. Gross, and we find no evidence to the contrary, the same rules of law still cannot be applied to all the money allegedly owing, for the reason that the items of litigation were in various stages of completion.

The contract contains two provisions covering the reimbursement of the attorney for out of pocket expenses. The first of these contemplates reimbursement when the litigation has been successfully completed. The second contemplates reimbursement for expenses before recovery has been made. Given the fact that this is a contingent-fee contract, this second provision obviously was intended to give the attorney compensation for his expenses even if the litigation was not brought to a successful conclusion.

The first of the two provisions providing for reimbursement imposes a charging lien upon the proceeds of the suit for expenses, as provided in the statutes of this state. See R.C.M.1947, Section 93-2120.

However it is generally held that such a lien may be waived. "A charging lien is deemed to be waived if the attorney neglects to enforce it until the debtor has in good faith discharged the liability under the judgment * * *. *So too, there is a waiver if the attorney agrees that the proceeds of judgment shall be remitted as collected, and that he shall receive payments at stated intervals * * *.*" (Emphasis added). Am.Jur.2d Attorneys at Law, Vol. 7, § 292, p. 209.

Several of the items which appellant alleges are owed to him are expenses for actions which have been brought to a successful conclusion. Therefore they would be covered by

that portion of the contract which imposes a charging lien upon the proceeds of the suit.

■ One expense presented in the appellant's itemized list of expenses is for $323.84. This sum represents expenses in the settlement of the case of Holzworth v. Sime. Gross did deduct some of the expenses from the amount obtained in that suit before the proceeds were divided. He expressed the belief that he would obtain the remainder later on from sums obtained in future litigation. We are of the opinion that his failure to deduct this amount from the award in the Sime case and his expressed intention that he would collect it from future settlements constituted a waiver of his charging lien.

This amount was deducted, and we think properly so, by the trial judge from the amount of expenses awarded the appellant.

■ The case concerning the Bank of Idaho had also been settled. Appellant failed to deduct the expenses for that case from the top of the settlement before the division of the money was made. Again he apparently felt that he would be reimbursed from awards gained in future litigation. His actions again constituted a waiver of his lien for expenses upon that suit.

It is obvious from a reading of the list of itemized expenses allegedly owed the appellant that some of them resulted from the prosecution of the Bank of Idaho case. These expenses were waived. Several of these items were removed by the trial judge when he made his decision as to what expenses were owed the appellant. He, the trial judge, was in a much better position to determine which of the expenses allegedly owed resulted from the Bank of Idaho case. We cannot say that there is a preponderance of the evidence against his findings in this respect.

The other expenses allegedly owed the appellant derive from cases which, at the time Gross withdrew from representing the respondent, had not been settled. They would therefore be

covered by that portion of the contract calling for compensation for expenses even though the litigation had as yet not been completed.

That provision of the contract referring to compensation for expenses before the completion of the action clearly states that the compensation will be for expenditures, "* * * in the attempt to effect the recovery and the institution and prosecution of litigation." Clearly expenditures made by the appellant and the respondent which did not affect the institution and prosecution of litigation would not be awardable under the contract.

A reading of the record and the exhibits reveals that there is nothing but the bare assertion of the appellant that the expenses listed were related to any attempt to "effect the recovery and the institution and prosecution of litigation." The appellant simply failed to establish that many of the expenses charged were covered by the contract.

Indeed there is some evidence that some of the expenses admittedly made by the respondent were of a purely personal nature and completely unrelated to any litigation.

The trial court ruled that the total of such expenses incurred in relation to the various items of litigation was $199.25. The trial judge was in a better position than this court to judge the facts of the situation. We cannot say that there is a preponderance of the evidence against his findings. Therefore they will be allowed to stand.

As to the respondent's cross appeal, we find it also to be without merit. The contract clearly states that in the event any suit was necessary or "instituted" the attorney was to receive forty per cent of the amount recovered.

The Revised Codes of Montana 1947, § 13-907 clearly state that: "A contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise." There was no evidence in the present case of any contract either written or an executed oral contract that would

vary the original contract. Therefore the terms of the original contract are binding and the respondent received all that he was entitled to from the settlement in the Bank of Idaho case.

For the foregoing reasons, the decision of the lower Court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES HASWELL, ADAIR and JOHN CONWAY HARRISON, concur.